NOT DESIGNATED FOR PUBLICATION

No. 117,472

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

TRACY D. RELEFORD,
*Appellee*.

MEMORANDUM OPINION

Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed December 22, 2017.
Affirmed.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee.

Before STANDRIDGE, P.J., PIERRON, J., and BURGESS, S.J.

PER CURIAM: Tracy D. Releford was charged with aggravated human trafficking and other charges after his encounter with an underage sex worker. Following a preliminary hearing, the district court originally found probable cause existed to bind over Releford for trial. He subsequently filed a motion to reconsider. Upon reconsideration, the court found the aggravated human trafficking statute required the State to present probable cause evidence of forced labor or involuntary servitude. The court found evidence of neither had been presented and dismissed the aggravated human

1

trafficking charge for lack of probable cause. The State appeals from the district court's ruling. We affirm.

Releford's charges arose from an incident that occurred late in the evening of August 15, 2016. Releford alleged he was propositioned outside a liquor store in Lawrence by K.H. and H.R. for sex in exchange for $50. Releford exchanged numbers with the two females to meet up at a later time. Later that evening, Releford agreed to meet the two females back at the liquor store. The two females accompanied Releford to Swope Park in Kansas City, Missouri, to meet James Wilson. According to Releford, the females agreed to $25 each for sex.

Upon arriving at Swope Park, K.H. got into Wilson's vehicle, and H.R. remained with Releford. Wilson had sex with K.H. Releford digitally penetrated H.R., but he could not achieve an erection in order to have sex. K.H. received $25 for her actions with Wilson. Upon returning to Lawrence though, Releford refused to pay H.R. In response, H.R. took Releford's keys, announced that she was only 16 years old, and said she was calling police. Releford had been under the impression that K.H. was 21 and H.R. was 19. Releford also called the police. H.R. was, in fact, only 16 years old, and K.H. was 20 years old.

H.R. claimed sex was never a part of the transaction. She claimed Releford offered to give her and K.H. a ride. While in the car, Releford had agreed to help K.H. with rent money. After calling multiple people, Releford found someone willing to lend him $50, but the three had to go to Kansas City to pick up the $50. Upon arriving in Kansas City, K.H. went with Wilson and H.R. remained with Releford. When H.R. and Releford were alone, Releford effectively persuaded her to have sex with him. H.R. stated: "I never stated that I didn't want to, but I also never stated that I did want to." Eventually all three returned to Lawrence. H.R. took Releford's car keys when they returned to Lawrence

2

after Releford and K.H. began to argue about the money. The police were called by Releford and K.H.

The preliminary hearing in question occurred on September 27, 2016. Following the presentation of evidence, Releford's counsel argued the State had mischaracterized the elements necessary to prove aggravated human trafficking. Due to the district court's schedule, arguments on this issue were continued to September 30, 2016. Releford's counsel argued the State had to prove the victim was subjected to forced labor or involuntary servitude, while the State argued that was not an element of aggravated human trafficking. The court held its decision on the aggravated human trafficking charge and bound over Releford for trial on the other charges. The district court ruled probable cause existed for the aggravated human trafficking charge on December 16, 2016.

On January 3, 2017, Releford filed a motion for reconsideration. He argued the State had to prove human trafficking as defined in K.S.A. 2016 Supp. 21-5426(a) in order to prove an aggravated human trafficking charge under K.S.A. 2016 Supp. 21-5426(b)(4). Releford filed a supplemental memorandum in support of his previous motion on January 5, 2017, adding the testimony of Professor Tom Stacy regarding legislation which amended K.S.A. 21-5426(b) in 2012. The State filed its response on January 11, 2017, arguing the statute should be interpreted to exclude any force, fraud, or coercion requirement of K.S.A. 2016 Supp. 21-5426(a).

The district court heard the motion to reconsider on January 12, 2017. After arguments from both sides, the court took the matter under advisement. The court issued a memorandum decision on March 9, 2017, and held that the State had to prove the victim was subject to forced labor or involuntary servitude and "recruited, harbored, transported, provided or obtained" for services or labor. The court found that no probable cause existed for those elements and dismissed the aggravated human trafficking charge.

The State filed a motion to dismiss the remaining charges on March 20, 2017, and the court granted the motion via an order of dismissal filed March 22, 2017.

Releford contends the State's issue is not properly before us because it did not include a pinpoint reference indicating where the issue was raised in violation of Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 35). Releford claims the State's noncompliance with Rule 6.02(a)(5) prevents us from hearing the issue citing *State v. Godfrey*, 301 Kan. 1041, 350 P.3d 1068 (2015). The State filed a reply brief to address this issue. The State first maintains the appeal "stems from a specific statutory right," making it proper. The State also claims it complied with Rule 6.02(a)(5) and all of the caselaw cited by Releford is inapplicable.

Whether jurisdiction exists is a question of law over which our scope of review is unlimited. *State v. Smith,* 304 Kan. 916, 919, 377 P.3d 414 (2016). Releford does not seem to fully understand the caselaw he cites for this issue. *State v. Beltz*, 305 Kan. 773, 776-77, 388 P.3d 93 (2017), *Godfrey*, 301 Kan. at 1043-44, *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), and *In re Ch.W.*, No. 114,034, 2016 WL 556385, at *3 (Kan. App. 2016) (unpublished opinion), only apply to the provision of Rule 6.02(a)(5) explaining why an issue "not raised below" is being raised for the first time on appeal. The issue in this case though was raised below, a fact conceded to by Releford. The State filed a response to Releford's motion for reconsideration and opposed his motion at the hearing. This appeal may proceed.

The State contends "the district court's construction of" K.S.A. 2016 Supp. 21-5426(b)(4) was incorrect. The State maintains the statute is ambiguous and contains two conflicts. First, the State argues the statute requires the defendant to "obtain control over his victim through force, fraud and coercion while simultaneously removing that requirement." Second, the statute requires "the defendant contact his victim for the purpose of either labor or servitude while simultaneously adding" sexual gratification.

4

The State believes the district court correctly decided the intent of the Legislature was removal of the fraud, force, or coercion part of the statute with regard to the first conflict. Regarding the second conflict, the State believes the district court was incorrect in requiring "the victim be used for labor or services and subjected to involuntary servitude or forced labor."

The State points out that before the statute in question was amended in 2012, the concern was the aggravated human trafficking statute criminalized trivial behavior like one underage individual transporting another underage individual for sex. This is why the Legislature amended the aggravated human trafficking statute (K.S.A. 2016 Supp. 21-5426[b]) to require proof of human trafficking as part of the offense (K.S.A. 2016 Supp. 21-5426[a]). To maintain this purpose, the State proposes requiring the purpose of contact with the victim be "labor or services," but not require proof of forced labor or involuntary servitude. The State notes this fits along with the recently proposed amended version of the statute. Using its version of the statute, the State maintains probable cause existed to bind over Releford for trial. Using the district court's version of the statute, the State maintains H.R. was "engaged in involuntary sexual servitude and forced sexual labor" meeting the statutory requirement.

Releford contends the district court's interpretation of the statute was correct and there was not probable cause to support the charge. Releford reviews the basics of statutory interpretation including ambiguities in legislative intent "must be construed in favor of criminal defendants." He argues the statute's plain language controls in this case. Releford claims this interpretation is also supported by the PIK instructions. The plain language requires proof of either forced labor or involuntary servitude. Alternatively, Releford maintains "the rules of statutory construction support the district court's conclusions."

5

Releford reviews the legislative history surrounding the aggravated human trafficking statute. He contends the State's interpretation of the statute leaves the statute's most recent 2012 amendments without meaning. Releford argues any discussion of ongoing legislation is not properly before the court as it "is raised for the first time on appeal." Nonetheless, Releford maintains pending legislation supports his version of the statute. Lastly, Releford contends the district court was correct in finding probable cause lacking.

"'When the State appeals the dismissal of a complaint, an appellate court's review of an order discharging the defendant for lack of probable cause is de novo.' [Citations omitted.]" *State v. Fredrick*, 292 Kan. 169, 171, 251 P.3d 48 (2011). "It is the role of an appellate court to 'view the evidence as would a detached magistrate at a preliminary hearing. The issue is sufficiency of the evidence.' [Citations omitted.]" 292 Kan. at 171.

"To determine whether there is sufficient evidence to cause a person of ordinary prudence and caution to entertain a reasonable belief of the accused's guilt, the court must draw inferences favorable to the prosecution. Moreover, the evidence needs only to establish probable cause, not guilt beyond a reasonable doubt. The court's role is not to determine the wisdom of the decision to file charges or to determine whether the possibility of a conviction is likely or remote." *State v. Anderson*, 270 Kan. 68, 71, 12 P.3d 883 (2000).

Likewise, statutory interpretation is subject to unlimited review. *State v. Paul*, 285 Kan. 658, 661, 175 P.3d 840 (2008). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. 303 Kan. at 813.

K.S.A. 2016 Supp. 21-5426(b)(4) provides:

> "Aggravated human trafficking is human trafficking, as defined in subsection (a):
>
> . . . .
>
> "(4) involving recruiting, harboring, transporting, providing or obtaining, by any means, a person under 18 years of age knowing that the person, with or without force, fraud, threat or coercion, will be used to engage in forced labor, involuntary servitude or sexual gratification of the defendant or another."

It is worth noting that the statute has recently been amended. The 2017 version is not the same as the statute at the heart of this dispute. L. 2017, ch. 78, §10.

K.S.A. 2016 Supp. 21-5426(a) contains four subsections of its own. In this case, the State only discusses the applicability of subsection (a)(1) so our discussion will be similarly limited. An issue not briefed by the appellant is deemed waived or abandoned. *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016) (criminal). K.S.A. 2016 Supp. 21-5426(a)(1) provides: "Human trafficking is . . . [t]he intentional recruitment, harboring, transportation, provision or obtaining of a person for labor or services, through the use of force, fraud or coercion for the purpose of subjecting the person to involuntary servitude or forced labor." Therefore, in order to prove aggravated human trafficking, the State must first demonstrate basic human trafficking as defined in K.S.A. 2016 Supp. 21-5426(a)(1).

The State claims it does not have to show Releford intended to subject H.R. to forced labor or involuntary servitude, but instead only sexual gratification. The plain language of the statute though says otherwise. It is true that the aggravated human trafficking statute provides that the victim "will be used to engage in forced labor, involuntary servitude or sexual gratification"; however, this is after the statute says "[a]ggravated human trafficking is human trafficking, as defined in subsection (a)."

7

K.S.A. 2016 Supp. 21-5426(b)(4). A necessary precursor to aggravated human trafficking under K.S.A. 2016 Supp. 21-5426(b)(4), as the statute read in 2016, was human trafficking as defined in K.S.A. 2016 Supp. 21-5426(a). As noted above, the State only argues about the applicability of (a)(1). Looking to (a)(1), the language is clear, the victim must be sought "for the purpose of subjecting the person to involuntary servitude or forced labor." K.S.A. 2016 Supp. 21-5426(a)(1).

Another indication of this plain language is a simple look at the PIK instructions. The PIK instruction for aggravated human trafficking with a minor victim requires either involuntary servitude or forced labor as an element of the crime if applying K.S.A. 2016 Supp. 21-5426(a)(1). PIK Crim. 4th 54.451. Either forced labor or involuntary servitude is a necessary element of the crime.

The State's interpretation ignores the fact that it must prove "human trafficking, as defined in subsection (a)" in order to even reach an aggravated human trafficking charge under K.S.A. 2016 Supp. 21-5426(b)(4). This interpretation is not supported by the plain language of the statute. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Williams*, 303 Kan. at 813. It is readily apparent that subsection (a) must be met to prove aggravated human trafficking. There is no question the statute clearly says that. K.S.A. 2016 Supp. 21-5426(b). K.S.A. 2016 Supp. 21-5426(a)(1), the only subsection the State argues is applicable, clearly requires either forced labor, or involuntary servitude. The district court was correct in requiring the State to show probable cause that H.R. was sought for either forced labor or involuntary servitude.

The State's final point in its brief is that if either forced labor or involuntary servitude is a required element of aggravated human trafficking, probable cause existed for both at the preliminary hearing. The State attempts to do this by using the definitions

8

of service and labor from Black's Law Dictionary. The State is once again incorrect. First, a better analysis to determine the existence of probable cause of forced labor or involuntary servitude is by using the Black's Law Dictionary definitions of those exact terms, not service and labor. Black's Law Dictionary 761 (10th ed. 2014) defines forced labor: "Work exacted from a person under threat of penalty; work for which a person has not offered himself or herself voluntarily." Black's Law Dictionary 1578 (10th ed. 2014), defines involuntary servitude: "The condition of one forced to labor—for pay or not—for another by coercion or imprisonment."

Probable cause is absent that Releford recruited, harbored, transported, provided, or obtained H.R "for the purpose of subjecting [her] to involuntary servitude or forced labor." K.S.A. 2016 Supp. 21-5426(a)(1). Looking to the above definitions of forced labor and involuntary servitude, the State has failed to identify any evidence establishing probable cause. The State points to the "threats and aggressive" behavior H.R. testified to "that led her to acquiesce to sex with Releford." The portion of H.R.'s testimony which the State cites describes H.R. being heavily persuaded by Releford to have sex. It cannot however, be characterized as forced labor or involuntary servitude. The district court was correct in dismissing the aggravated human trafficking charge for lack of probable cause. We note the statute has been amended.

Affirmed.